UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

OMID AZH,

Petitioner,

v.

CHRISTOPHER J. LAROSE, et al.,

Respondents.

Case No.:  25cv3391-LL-JLB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

[ECF No. 1]

Before the Court is Petitioner Omid Azh's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Return in opposition to the Petition [ECF No. 6 ("Ret.")], and Petitioner filed a Traverse [ECF No. 8 ("Traverse")]. For the reasons set forth below, the Court **GRANTS** the Petition.

## I.    BACKGROUND

Petitioner is an Iranian "political activist" who entered the United States on April 2, 2025, seeking asylum for political persecution in Iran. Traverse at 1. Petitioner did not have any valid entry documents to enter the United States and was arrested by the Border Patrol after he crossed the San Ysidro border without inspection. Ret. at 2. He was immediately detained and ultimately transferred to Immigration and Customs Enforcement ("ICE") custody at Otay Mesa Detention Center ("OMDC"). Ret. at 2; Traverse at 1. On April 15,

1

2025, a Department of Homeland Security ("DHS") asylum officer interviewed Petitioner and found that it was more likely than not that Petitioner would be tortured in Iran. Ret. at 2. On July 8, 2025, Petitioner was issued a Notice to Appear, charging him as inadmissible under 8 U.S.C. §1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled. *Id*. The Notice to Appear scheduled Petitioner's initial master calendar hearing for July 10, 2025. *Id*. at 3. Multiple regular calendar hearings were held on Petitioner's case throughout the summer on July 31, August 7, and August 28, 2025. Ret. at 3; ECF No. 6-1 at 15–23. On August 22, 2025, Petitioner's attorney entered an appearance, and on August 27, 2025, Petitioner filed Form I-589, Application for Asylum and Withholding of Removal ("Asylum Application"). Ret. at 3. On September 25, 2025, Petitioner submitted documentary evidence in support of his Asylum Application. ECF No. 6-1 at 32–38. On October 16, 2025, the Immigration Court scheduled Petitioner's individual merits hearing to be held on February 11, 2026. Ret. at 3.

Petitioner remains detained at the OMDC under 8 U.S.C. § 1225(b)(1)(B)(ii). Ret. at 3. At OMDC, Petitioner is locked up behind razor wire and concrete walls in a secured facility and is forced to wear a color-coded prisoner jump suit "like being in a prison." Traverse at 9 (citations omitted); ECF No. 8-1 ¶ 6. He is forbidden from accessing the internet, restricted from accessing outdoor space, restricted on visitation, and guarded at all times with armed guards authorized to inflict punishment for violation of rules. Traverse at 9 (citations omitted); ECF No. 8-1 ¶ 6. Petitioner suffers from stomach ulcers and irritable bowel syndrome, and his health has "significantly deteriorated" due to OMDC not providing him "consistent medical treatment." Pet. at 6. Throughout his detention, Petitioner has never received a bond hearing. Traverse at 2.

On December 1, 2025, Petitioner filed the instant Petition, alleging that his prolonged detention violates the Fifth Amendment's Due Process Clause. Pet. at 6; Traverse at 3–9. He seeks a writ of habeas corpus directing Respondents to immediately release him from custody. Pet. at 7.

/ / /

25cv3391-LL-JLB

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("Section 2441 habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention."); *see also Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order.")).

## III.    DISCUSSION

### A.    Jurisdiction

Respondents argue that as a threshold matter, Petitioner's claims and requested relief are jurisdictionally barred under 8 U.S.C. § 1252(g). Ret. at 4–5. Specifically, Respondents argue that Petitioner's claims are barred because they arise "from the decision or action of the Attorney General to commence removal proceedings," which prohibits district court jurisdiction. Ret. at 5. The Court disagrees.

Section 1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause

or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." 8 U.S.C. § 1252(g). However, the Supreme Court has narrowly interpreted § 1252(g) as applying "only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) (noting that courts have "distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not.").

In fact, the Supreme Court has previously rejected as "implausible" Respondents' suggestion that § 1252(g) covers "all claims arising from deportation proceedings" or imposes "a general jurisdictional limitation." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907 (2020) (citing *Reno.*, 525 U.S. at 482. In other words, Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez*, 154 F.4th at 997.

Here, Petitioner is not challenging the commencement of removal proceedings but is instead claiming a lack of legal authority to detain him for a prolonged time without a bond hearing during the removal proceedings. *See Ibarra-Perez*, 2025 WL 2461663, at *2 (noting that a claim based on a lack of legal authority to execute a removal order due to a violation of a court order, the Constitution, [Immigration and National Act], or international law, does not challenge the decision or action to execute a removal order). Therefore, the Court finds that § 1252(g) does not limit the Court's jurisdiction in this matter.

/ / /

/ / /

4

25cv3391-LL-JLB

**B.      Fifth Amendment Due Process Clause**

Petitioner argues that his prolonged detention without a bond hearing violates the Fifth Amendment's Due Process Clause. Pet. at 6; Traverse at 3–9. Respondents contend there is no due process violation because Petitioner is detained pursuant to § 1225(b)(1), which mandates detention through the conclusion of the removal process, and that is all the process he will receive. Ret. at 6–7.

The Due Process Clause of the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* The Ninth Circuit has questioned the constitutionality of certain immigration detention statutes, including § 1225(b):

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L.Ed.2d 653 (2001) (internal quotation marks and citation omitted).

*Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) (alteration in original).

The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process. *See Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *2 (S.D. Cal. Nov. 12, 2025) ("This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Maksin v. Warden,*

*Golden State Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause." (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted,* No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019))); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116–17 (W.D. Wash. 2019).

Respondents rely on two cases to support their argument that § 1225(b)(1) and its provision for mandatory detention provides all the process that Petitioner is due. Ret. at 7–9 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953)). However, the Court is not persuaded.

In *Thuraissigiam*, the habeas petitioner argued that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 violated "his right to due process by precluding judicial review of his allegedly flawed credible-fear proceeding." *Thuraissigiam*, 591 U.S. at 138. The Supreme Court found that the petitioner, as an applicant for admission, was provided "the right to a determination whether he had a significant possibility of establishing eligibility for asylum" pursuant to § 1225(b), and that he had "only those rights regarding admission that Congress has provided by statute." *Id.* at 140 (internal quotation marks and brackets omitted) (quoting §§ 1225(b)(1)(B)(ii), (v)). The Court finds *Thuraissigiam* addressed a noncitizen's right to challenge *admission*, not detention. *See,*

25cv3391-LL-JLB

*e.g., Sadeqi*, 2025 WL 3154520, at \*2 ("This Court likewise agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving [noncitizen's] due process rights to *admission*, rather than limiting that person's ability to challenge *detention*."); *Aviles-Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at \*4 (N.D. Cal. Sept. 5, 2025) (finding *Thuraissigiam* inapplicable to cases challenging detention).

The Court finds *Mezei* is also distinguishable. *Mezei* involved a noncitizen who had been "permanently excluded from the United States on security grounds but stranded in his temporary haven on Ellis Island because other countries [would] not take him back." *Mezei*, 345 U.S. at 207. The Supreme Court recognized Mezei's exclusion for security reasons as different from noncitizens who may be released from detention on bond. *Id.* at 216 ("An exclusion proceeding grounded on danger to the national security, however, presents different considerations; neither the rationale nor the statutory authority for such release exists."). The facts are significantly different because Petitioner has not been excluded as a security risk, does not have a final order of removal, and has been granted asylum. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003) ("[T]he *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to issue of whether prolonged detention without a bond hearing violates due process).

Respondents argue that applying the three-factor balancing test articulated in *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) demonstrates that Petitioner's detention is not unconstitutional at this stage. Ret. at 9–11. Petitioner contends that applying the balancing test articulated in either *Lopez* or *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019), shows that his detention violates his due process rights. Traverse 5–9.

Courts in the Ninth Circuit have used various factor tests to determine whether due process requires a bond hearing in immigration detention cases, including the *Banda* test. In *Banda*, the court considered the following factors to determine whether prolonged

25cv3391-LL-JLB

mandatory detention under § 1225(b) in a particular case violates the Due Process Clause: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)). Similarly, in *Lopez*, the case that Respondents rely on, the court considered the first, second, fourth, and fifth *Banda* factors for its analysis. *See Lopez*, 631 F. Supp. 3d at 879 ("the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceeding caused by the petitioner and the government.") Therefore, this Court will analyzed under the *Banda* factors.

The Court first considers the length of detention. The total length of detention is considered the most important factor. *Banda v. McAleenan*, 385 F. Supp. 3d at 1118. To date, Petitioner has been in detention for nearly ten months. Courts have found detentions of similar and shorter duration without a bond hearing weigh toward a finding that they are unreasonable. *See, e.g.*, *Gao v. LaRose*, No. 25-CV-2084-RSH-SBC, 2025 WL 2770633, at *5 (S.D. Cal. Sept. 26, 2025) (over ten months); *Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) (nearly nine months); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (over seven months); *Brissett v. Decker*, 324 F. Supp. 3d 444, 452 (S.D.N.Y. 2018) (over nine months). Therefore, the Court finds the length of detention weighs in favor of Petitioner.

Next, the Court considers the second factor: likely duration of future detention. Respondents point out that Petitioner has an individual merits hearing on February 11, 2026 and argue that there is no indication that Petitioner's Asylum Application will not be adjudicated at that time. Ret. at 10. However, as Respondents also point out, there have been multiple continuances in Petitioner's case (*id*.), so there is always a chance that the February hearing may be continued for whatever reason. Moreover, depending on the outcome of Petitioner's Asylum Application, Petitioner's future detention can last several

25cv3391-LL-JLB

more months or even years if Petitioner or Respondents decide to appeal the decision to the Board of Immigration Appeals and thereafter to the Ninth Circuit. *See Banda*, 385 F. Supp. 3d at 1119 (finding an appeal to the BIA and subsequent judicial review "may take up to two years or longer"). The Court finds the duration of future detention weighs in favor of Petitioner.

In considering the conditions of detention, "[t]he more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (second alteration in original) (citation omitted). Petitioner is detained at OMDC, where Petitioner claims that "it is like being in prison." ECF No. 8-1 ¶ 6. According to Petitioner, he is "locked up behind razor wire and concrete walls in a secured facility, forced to wear a color-coded prisoner jump suit, forbidden from accessing the internet," restricted from accessing outdoor space, restricted on visitation, and guarded at all times with armed guards authorized to inflict punishment for violation of rules." Traverse at 9 (citations omitted); ECF No. 8-1 ¶ 6. Moreover, Petitioner has alleged that OMDC has "failed to provide consistent medical treatment" and that his health has "significantly deteriorated" due to OMDC's failure. Pet. at 6. Courts have found confinement at OMDC is "indistinguishable from penal confinement." *Gao*, 2025 WL 2770633, at *4; *Kydyrali*, 499 F. Supp. 3d at 773. The Court finds this factor weighs in favor of Petitioner.

The fourth and fifth factors concern delays in the removal proceedings caused by Petitioner or the Respondents. There does not seem to be any disproportionate delays from either Petitioner or Respondents. Respondents filed the Notice to Appear in July 2025 three months after Petitioner received a positive credible fear determination by a DHS asylum officer in April 2025. Ret. at 2. A little over a month later, Petitioner submitted his Asylum Application in August 2025 and submitted documentary evidence the following month in September 2025. In October 2025, the Immigration Court scheduled the individual merits hearing for February 2026. Overall, all actions by either Petitioner or Respondents occurred

25cv3391-LL-JLB

within three to four months. The Court finds no showing that either side has caused undue delays, so these factors are neutral.

In considering the "likelihood that the removal proceedings will result in a final order of removal," the Court considers "whether the noncitizen has asserted any defenses to removal." *Banda*, 385 F. Supp. at 1120 (citations omitted). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (citing *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)). A DHS asylum officer already concluded that "it is more likely than not that [Petitioner] will be tortured in IRAN." ECF No. 6-1 at 7. Thus, the Court finds that this factor weighs in favor of Petitioner.

Considering all the factors, the Court finds Petitioner's mandatory detention under § 1225(b) has become unreasonable and that due process requires that he be provided with a bond hearing.[1] *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("[W]e note that the discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention."). At the bond hearing before a neutral immigration judge, Respondents "must justify his continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released." *Gao*, 2025 WL 2770633, at *5 (citations omitted); *Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024) (noting that due process requires "the government to prove dangerousness or risk of flight by clear and convincing evidence" at a bond hearing for noncitizens subject to prolonged detention (citing *Singh v. Holder*, 638 F.3d 1196, 1200, 1205 (9th Cir. 2011)))

With all factors weighing in favor of Petitioner, the Court finds due process requires that he be provided with a bond hearing. At the bond hearing before a neutral immigration

---

[1] Although Petitioner requests immediate release from detention, he provides no authority to show he is entitled to such relief. The Court thus finds the appropriate remedy in this case is a bond hearing. *See Lopez v. Garland*, 631 F. Supp. 3d 870, 882 (E.D. Cal. 2022).

25cv3391-LL-JLB

judge, Respondents "must justify his continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released." *Gao v. LaRose*, No. 25-CV-2084-RSH-SBC, 2025 WL 2770633, at *5 (S.D. Cal. Sept. 26, 2025) (citations omitted); *Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024) (noting that due process requires "the government to prove dangerousness or risk of flight by clear and convincing evidence" at a bond hearing for noncitizens subject to prolonged detention (citing *Singh v. Holder*, 638 F.3d 1196, 1200, 1205 (9th Cir. 2011))).

Accordingly, the Court **GRANTS** the Petition.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241. Within **seven days** of this Order, Respondents are directed to arrange an individualized bond hearing before a neutral immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if released.

**IT IS SO ORDERED**.

Dated:  January 27, 2026

_____
Honorable Linda Lopez
United States District Judge

25cv3391-LL-JLB